STATE OF MINNESOTA                    IN DISTRICT COURT

COUNTY OF CARVER                      FIRST JUDICIAL DISTRICT

                                     Court File No._____

                                     CASE TYPE: OTHER CIVIL

_____
                                )
Vickerman Company,              )
                                )
            Plaintiff,          )
                                )          SUMMONS
       vs.                      )
                                )
Alexander Kushner,              )
       and,                     )
April, Inc.,                    )
            Defendants.         )
                                )
_____)

**THIS SUMMONS IS DIRECTED TO:  Alexander Kushner**

**1. YOU ARE BEING SUED.**

The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

**2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**

You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

> DuFault Law Firm, P.C.
> PO Box 1219
> Minnetonka MN 55345

**3. YOU MUST RESPOND TO EACH CLAIM.**

The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you

must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.**

If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.**

You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.**

The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: April 27, 2017                                    **DuFAULT LAW FIRM, P.C.**

By:

Dustin R. DuFault (#302,776)
**DuFault Law Firm, P.C.**
PO Box 1219
Minnetonka MN 55345
DDuFault@DuFault-Law.com
Tel: 952-935-4392

2

STATE OF MINNESOTA                    IN DISTRICT COURT

COUNTY OF CARVER                     FIRST JUDICIAL DISTRICT

                                     Court File No._____

                                     CASE TYPE: OTHER CIVIL

_____
                                )
Vickerman Company,              )
                                )
            Plaintiff,          )
                                )
                                )        COMPLAINT
        vs.                     )
                                )
Alexander Kushner,              )
        and,                    )
April, Inc.,                    )
            Defendants.         )
                                )
_____

     This is an action for declaratory relief, breach of contract, breach of license, tortious interference with third-party contracts and tortious interference with existing business relations. Plaintiff Vickerman Company, as and for its Complaint against Defendants Alexander Kushner and April, Inc., hereby state as follows:

## THE PARTIES

     1.    Plaintiff Vickerman Company is a Minnesota corporation with its principal place of business located at 675 Tacoma Blvd, Norwood Young America, Minnesota, 55368 (hereinafter "Vickerman"). Vickerman is a wholesaler supplier company that sells to retailers and professional decorators, *inter alia,* a variety of decorative items including, but not limited to, artificial

Christmas trees, electric lights for Christmas trees and holiday decoration, and artificial flower arrangements.

2.     Upon information and belief, Alexander Kushner, an individual, is a Minnesota resident residing at 3150 Zircon Lane North, Plymouth, Minnesota, 55447. Mr. Kushner is a software programmer proficient in computer coding and programming.

3.     Upon information and belief, Defendant April, Inc., is a closely held Minnesota corporation with its principal executive office address located at 3150 Zircon Lane North, Plymouth, Minnesota, 55447 (hereinafter "April").     Upon information and belief, Defendant April is in the business of providing computer coding and programming.  Upon information and belief, Kushner is April's Chief Executive Officer and controlling shareholder.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the parties because Plaintiff Vickerman has its principal place of business in this district, each party is a Minnesota resident, and each party transacts business within this jurisdiction.

5.     Venue in this district is proper because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Plaintiff resides in this district.

-2-

**FACTUAL BACKGROUND**

I.    **Creation of the Oral Agreement and Vickerman Software.**

6.    Vickerman is a Minnesota wholesaler supplier company that sells nationwide to retailers and professional decorators a variety of decorative items, including Christmas-themed items such as artificial Christmas trees, string lights for Christmas trees, and lit Christmas ornaments, amongst many other products. Vickerman also sells non-holiday decorations as well, including artificial indoor trees and plants, artificial floral arrangements and the like.

7.    Vickerman is a closely held corporation owned and operated by two individuals, namely Peter Vickerman (Vickerman's President) and Randy Schuster (Vickerman's Chief Executive Officer).

8.    Since at least 2004, to assist in operating its business, Vickerman has utilized a fully integrated business management software platform called "Everest" (hereinafter the "Everest platform") which Vickerman pays a yearly licensing fee to Everest Software based out of Austin, Texas.

9.    In or about 2004, Schuster recognized both needs and opportunities by which additional software modules could be developed to further enhance the capabilities of the Everest platform for use in connection with Vickerman's business.   Schuster communicated these concerns to a consultant of Everest Software.

-3-

10.     Shortly thereafter, in or about 2004, the Everest Software consultant introduced Schuster to Kushner.   Schuster and Kushner conducted discussions concerning Kushner's assistance in developing the additional software modules that would work in conjunction with the Everest platform for Vickerman's benefit in its business.

11.     At the conclusion of these initial discussions, in or about 2004, Kushner entered into an oral agreement with Vickerman (hereinafter the "Agreement") whereby:

a.      At the direction of Schuster, Kushner would write software source code needed to compile the software modules to work in conjunction with the Everest platform so that Vickerman could operate the core of its internal and external operations via a computer network, including an internet website, as well as order fulfillment and order processing services (hereinafter the "Vickerman Software");

b.      From time to time as needed, Kushner would provide monitoring and maintenance of the Vickerman Software to address any issue with the Vickerman Software that may arise;

c.      For purposes of convenience, Kushner would attempt to maintain at least some of the Vickerman Software source code on servers owned and/or operated by Kushner; and

-4-

     d.     Kushner would be compensated by Vickerman for the items listed in sub-paragraphs a – c, *supra*.

12.     In or about 2004, after entering into the Agreement, Kushner began performance of his duties and obligations thereunder and began writing software modules for the Vickerman Software for use with the Everest platform.

13.     In or about 2004, after entering into the Agreement, Kushner began providing monitoring and maintenance of the Vickerman Software to address issues with the Vickerman Software as they arose.

14.     In or about 2004, after entering into the Agreement, Kushner maintained most, but not all of, the Vickerman Software's source code on servers owned and/or operated by Kushner.

15.     At all times the Vickerman Software's compiled code has resided on Vickerman's servers.

16.     From 2004 until approximately 2011, in accordance with the terms of the oral agreement, on an approximately yearly basis, Vickerman paid Kushner for writing, monitoring, maintaining, and troubleshooting, as well as hosting the source code, of the Vickerman Software.

17.     Upon information and belief, in or about 2012, Kushner founded Defendant April.

18.   Beginning in 2012, Defendant April assumed the duties and obligations under the Agreement and began to perform said duties and obligations of Kushner under the Agreement.

19.   For all intents and purposes, the transition from Kushner to April was one merely of business entity structure, wherein Kushner remained the key figure for performing the duties and obligations under the Agreement.

20.   From 2012 until 2016, in accordance with the terms of the Agreement, on an approximately yearly basis, Vickerman paid April for writing, monitoring, maintaining, and troubleshooting, as well as hosting the source code, of the Vickerman Software.

21.   Prior to entering into the Agreement, Kushner gave no indication, either implicitly or explicitly, that Vickerman would ever be denied access to the source code, hosted on Kushner's server, which supported the Vickerman Software, for which Kushner was compensated.

22.   After entering into the oral agreement, and prior to March, 2017, in a span of more than 12 years, never once did Kushner give any indication, either implicitly or explicitly, that Vickerman would ever be denied access to the source code, hosted on Kushner's and/or April's server, which supported the Vickerman Software, for which Kushner was compensated.

23.     Prior to March, 2017, April provided no indication, either implicitly or explicitly, that Vickerman would ever be denied access to the source code which supported the Vickerman Software.

24.     Since 2004, Kushner and/or April have provided fourteen modules that run in conjunction with the Everest platform, and which constitute the core of the Vickerman Software.

25.     Since 2004, Vickerman has had an implied license to the Vickerman Software, said license being granted by Kushner.

26.     Since at least 2012, Vickerman has had an implied license to the Vickerman Software, said license granted and/or ratified by April.

27.     Since 2004, the Vickerman Software has become absolutely vital in the day-to-day operations of Vickerman's business as the Vickerman Software operates the core of all of Vickerman's internal and external operations.

28.     Being intimately involved with the development of the Vickerman Software since 2004 until at least March, 2017, Kushner is highly aware of the absolutely vital nature the Vickerman Software plays to the core of Vickerman's business.

29.     In or about 2014, Vickerman provided Kushner and/or April with a computer for which Kushner and/or April were to develop additional modules for Vickerman.

-7-

30. Upon information and belief, Kushner and/or April developed at least one module on the Vickerman-provided computer.

31. Upon information and belief, the aforementioned Vickerman-provided computer contained the source code for the at least one module developed by Kushner and/or April.

32. The source code of the Vickerman Software module "Integrated Everest API" was stored on a computer server owned and operated by Vickerman.

## II.     Kushner/April Abruptly Cease Performance

33. Aleran Software, Inc. (hereinafter "Aleran") is an unrelated closely held Minnesota corporation owned equally by Kushner and Schuster.

34. Prior to March 1, 2017, neither Kushner nor April gave any indication of any issues either party had with the Agreement Kushner entered into with Vickerman approximately 13 years prior.

35. On March 8, 2017, Kushner returned the aforementioned Vickerman-provided computer, the hard-drive of which had been wiped clean.

36. Upon information and belief, Kushner intentionally and without claim of right removed the source code of the at least one module from the Vickerman-provided computer.

37. Later, on March 14, 2017, via telephone, Kushner spoke with Peter Vickerman, stating:

a.  Effective immediately, neither Kushner nor April would be adding any additional modules to the Vickerman Software or updating the Vickerman Software to validate pricing of existing products entering the Vickerman system;

b.  Effective immediately, neither Kushner nor April would be providing monitoring or maintenance services to Vickerman in connection with the Vickerman Software;

c.  Effective immediately, while Kushner would continue to maintain the source code of the Vickerman Software on Kushner's and/or April's servers at no cost, neither Kushner nor April would allow Vickerman access thereto, thereby preventing Vickerman from (1) adding any new additional modules, (2) performing updates, monitoring and/or maintenance on any existing modules, or (3) updating the Vickerman Software to validate pricing of existing products entering the Vickerman system;

d.  Because Vickerman would not be provided access to their source code, and therefore unable to (1) add any new additional modules, (2) perform updates and/or maintenance on any existing modules, or (3) update the Vickerman Software to validate pricing of existing products entering the Vickerman system, Vickerman was essentially "…sitting on a ticking time bomb…" and that it was only

-9-

a matter of time before the Vickerman Software catastrophically failed, resulting in Vickerman being unable to perform any business; and

    e.    However, Kushner continued, if, and only if, Peter Vickerman would convince Schuster to sell all of Schuster's shares in Aleran to Kushner at a price well below the fair market value, then Kushner would give Vickerman its "...keys to the kingdom..." and provide Vickerman with access to the Vickerman Software source code so that Vickerman could continue its business.

38.    Upon information and belief, prior to March 14, 2017, without authorization or claim of right, Kushner remotely accessed the computer server owned and operated by Vickerman, and intentionally removed the source code of the Vickerman Software module "Integrated Everest API."

## III. Vickerman Is and Continues To Be Damaged

39.    Since March 14, 2017, Kushner and/or April have added no new modules to the Vickerman Software.

40.    Since March 14, 2017, Kushner and/or April have performed no monitoring services on the Vickerman Software.

41.    Since March 14, 2017, Kushner and/or April have performed no maintenance services on the Vickerman Software.

42.     Since March 14, 2017, Vickerman has been unable to make necessary modifications to the Vickerman Software to meet customer needs.

43.     Due to the errors in the Vickerman Software that have arisen which Vickerman cannot address on its own, Vickerman has lost more than 57 sales, totaling more than $8,000, as customers were not able to fully checkout and pay for cart orders after they were filled.

44.     Without access to the source code for the Vickerman Software, Vickerman stands to lose additional sales, damage its current and prospective customer relationships, and suffer reputational harm in its industry.

## IV.   Kushner's Actions Have Been To Deliberately Inflict Damage Upon Vickerman

45.     Kushner was, and continues to be, aware that if Vickerman is unable to access the Vickerman Software's source code, then Vickerman is unable to (1) add any new additional modules, (2) perform updates and/or maintenance on any existing modules, or (3) update the Vickerman Software to validate pricing of existing products entering the Vickerman system.

46.     Since March 14, 2017, there have been more than 5,000 errors in the Vickerman Software, none of which Vickerman has been able to address because it does not have access to the Vickerman Software source code.

47.     For each error, the Vickerman Software is set up so that Kushner receives a report thereon.

-11-

48.     Upon   information   and   belief,   Kushner   has   received   the aforementioned e-mailed reports detailing the more than 5,000 errors with the Vickerman Software.

49.     The Vickerman Software is not subject to any agreement with Aleran.

50.     The Vickerman Software is not related to Aleran.

51.     The Agreement between Vickerman and Kushner and/or April is not related to Aleran.

52.     Kushner has no legal basis of making Vickerman's access to the Vickerman Software's source code conditional and/or dependent upon the selling of Schuster's Aleran shares to Kushner.

53.     Kushner is, in effect, holding the Vickerman Software's source code "hostage" in order to coerce Schuster to sell his shares in Aleran to Kushner at a price well below the fair market value.

54.     Kushner's action of making Vickerman's access to the Vickerman Software's source code conditional and/or dependent upon the selling of Schuster's Aleran shares to Kushner amount to internal IT sabotage of the Vickerman Software.

55.     Kushner's action of making Vickerman's access to the Vickerman Software's source code conditional and/or dependent upon the selling of

-12-

Schuster's Aleran shares to Kushner is done knowingly, deliberately and maliciously to inflict damage upon Vickerman.

56.    As a shareholder of April, Kushner's knowingly, deliberate and malicious action of internal IT sabotage of the Vickerman Software pierce the corporate veil.

57.    Kushner's deliberate action of prohibiting Vickerman access to the Vickerman Software's source code conditional and/or dependent upon the selling of Schuster's Aleran shares to Kushner at a price well below the fair market value of the shares constitutes a threat to unlawfully inflict damage onto Vickerman.

58.    Kushner's action of intentionally removing the source code from the Vickerman-provided computer was without authorization or claim of right, and amounts to computer theft.

59.    Kushner's action of remotely accessing Vickerman's computer server to intentionally remove the source code of the Vickerman Software module "Integrated Everest API" was without authorization or claim of right, and amounts to computer theft.

60.    Kushner's action of intentionally removing the source code of the Vickerman Software module "Integrated Everest API" from Vickerman's computer server was without authorization or claim of right, and amounts to computer theft.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT - FAILURE TO REASONABLY UPDATE

61.     Vickerman incorporates by reference the preceding paragraphs.

62.     Defendants Kushner and April have materially breached the Agreement by unilaterally refusing to provide reasonable updates to the Vickerman Software, to the detriment of the Plaintiff.

63.     As a direct result of Kushner's and April's breach of the Agreement, Vickerman has been damaged in an amount to be determined at trial, but in an amount not less than $50,000.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT - FAILURE TO PROVIDE ACCESS TO SOURCE CODE

64.     Vickerman incorporates by reference the preceding paragraphs.

65.     Defendants Kushner and April have materially breached the Agreement by unilaterally refusing to provide access to the Vickerman Software's source code, to the detriment of the Plaintiff.

66.     As a direct result of Kushner's and April's breach of the Agreement, Vickerman has been damaged in an amount to be determined at trial, but in an amount not less than $50,000.

67.     The aforementioned conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## THIRD CAUSE OF ACTION: BREACH OF LICENSE

68.    Vickerman incorporates by reference the preceding paragraphs.

69.    Defendants Kushner and April have materially breached the implied license to the Vickerman Software by unilaterally refusing to provide updates and/or access to the Vickerman Software's source code, thereby frustrating the entire purpose of the Vickerman Software and the implied license, all to the detriment of the Plaintiff.

70.    As a direct result of Kushner's and April's breach of the implied license, Vickerman has been damaged in an amount to be determined at trial, but in an amount not less than $50,000.

71.    The aforementioned conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## FOURTH CAUSE OF ACTION: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

72.    Vickerman incorporates by reference the preceding paragraphs.

73.    Defendants Kushner and April have materially breached the implied covenant of good faith and fair dealing by refusing to provide Vickerman access to the Vickerman Software's source code, thereby frustrating the entire purpose of the Vickerman Software, all to the detriment of the Plaintiff.

74.    Defendants Kushner and April's material breach of the implied covenant of good faith and fair dealing has denied Vickerman the benefit of its bargain.

75.    Defendants Kushner and April have attempted to claw back from Vickerman opportunities foregone at the time of contracting. Without continuing access to the source code for the Vickerman Software, Vickerman would not have entered into the Agreement with Defendants.

76.    As a direct result of Kushner's and April's breach of the implied covenant of good faith and fair dealing, Vickerman has been damaged in an amount to be determined at trial, but in an amount not less than $50,000.

77.    The aforementioned conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

## FIFTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

78.    Vickerman incorporates by reference the preceding paragraphs.

79.    Vickerman has potential business relationships with current and prospective customers seeking its products and services.

80.    By intentionally, knowingly, or maliciously denying Vickerman access to the source code for the Vickerman Software, Kushner and April have interfered with Vickerman's prospective business relations.

-16-

81. Kushner and April have knowingly and intentionally frustrated Vickerman's ability to (1) add any new additional modules to the Vickerman Software, (2) perform updates and/or maintenance on any existing Vickerman Software modules, or (3) update the Vickerman Software to validate pricing of existing products entering the Vickerman system.

82. Defendants were aware of Vickerman's prospective business relationships and reasonable expectancy and anticipation of securing business from its existing and potential customers, when it engaged in the aforesaid conduct.

83. During the course of his ransom demand to Peter Vickerman on March 14, 2017, Kushner acknowledged that Vickerman was essentially "...sitting on a ticking time bomb..." and that it was only a matter of time before the Vickerman Software catastrophically failed, resulting Vickerman being unable to conduct business.

84. Kushner expressly conditioned his return of the "keys to the kingdom" (i.e., access to the Vickerman Software's source code) on the coercive sale of Schuster's interest in Aleran to Kushner at a price well below market value.

85. Defendants have intentionally and improperly interfered with Vickerman's prospective contractual relations by preventing Vickerman from maintaining, updating, operating, and accessing a key component of its operating infrastructure, the Vickerman Software, thereby causing prospective customers not

-17-

to enter into or continue the prospective relations and/or preventing Vickerman from acquiring or continuing the prospective relations.

86.     Upon information and belief, in the absence of the aforesaid conduct, Vickerman would have been able to secure additional sales, business, and profits from said prospective customers.

87.     As a direct result of Kushner's tortious interference with prospective business relations, Vickerman has been damaged in an amount to be determined at trial, but in an amount not less than $10,000.

88.     The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

**<u>SIXTH CAUSE OF ACTION: DECLARATORY JUDGMENT</u>**

89.     Vickerman incorporates by reference the preceding paragraphs.

90.     The declaratory relief sought by Vickerman in this action is authorized by, under, and pursuant to Rule 57 of the Minnesota Rules of Civil Procedure and Minnesota Statutes Chapter 555, the Minnesota Uniform Declaratory Judgments Act.

91.     There is a substantial and continuing controversy among Vickerman, Kushner and April as to the Agreement, and a declaration of rights is both necessary and appropriate.

-18-

92.     Vickerman is experiencing an ongoing injury as a result of Kushner's and/or April's material breach of the Agreement, which has forced Vickerman to incur substantial expense in maintaining the Vickerman Software without access to the source code.

93.     If Kushner and/or April is allowed to further prevent Vickerman access to the Vickerman Software's source code, Vickerman will eventually be restrained from trade.  Such a restraint on trade is unjustified, unwarranted and unreasonable in this situation.

94.     Accordingly, Plaintiff Vickerman seeks a declaration from the Court pursuant to the Minnesota Uniform Declaratory Judgments Act, Minn. Stat. §555.01, et seq. that:

     i.  Kushner and/or April is in material breach of the Agreement;

     ii.  Kushner and/or April is in material breach of the implied license;

     iii.  Kushner and/or April is in material breach of the implied covenant of good faith and fair dealing;

     iv.  Because Kushner and/or April has materially breached the Agreement, is in material breach of the implied license, or is in material breach of the implied covenant of good faith and fair dealing, Kushner and April must provide Vickerman with access to the Vickerman Software source code;

-19-

v. Because Kushner and/or April has materially breached the Agreement, is in material breach of the implied license, or is in material breach of the implied covenant of good faith and fair dealing, Kushner and April are severally and jointly liable to Vickerman for damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vickerman respectfully requests that judgment be entered in its favor against Defendants, which includes the following relief:

1.     A declaration that Kushner and/or April have materially breached the Agreement.

2.     A declaration that Kushner and/or April have materially breached the implied license.

3.     A declaration that Kushner and/or April have materially breached the implied covenant of good faith and fair dealing.

4.     A declaration that Kushner has tortuously interfered with the prospective business relations of Vickerman.

5.     Enter an order requiring Kushner and/or April to provide Vickerman with access to the Vickerman Software source code.

6.     An award against Defendants, both jointly and severally, in favor of Plaintiff in relation to Defendants' material breach of the Agreement, the implied

license and the implied covenant of good faith and fair dealing in amount to be determined at trial.

7.     Grant Vickerman temporary, preliminary, and permanent injunctive relief to prevent Defendants' threatened, anticipatory, and future violation of Vickerman's rights.

8.     An award against Defendants, both jointly and severally, in favor of Plaintiff for costs, disbursements, attorney's fees and other just relief as allowed by law or equity.

## JURY DEMAND

Plaintiff Vickerman Company hereby demands a trial by jury.

Dated: April 27, 2017                          **DuFAULT LAW FIRM, P.C.**

By:

Dustin R. DuFault (#302,776)
**DuFault Law Firm, P.C.**
PO Box 1219
Minnetonka MN 55345
DDuFault@DuFault-Law.com
Tel: 952-935-4392

## ACKNOWLEDGMENT

The party to this pleading, through its respective attorneys, acknowledge that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

-21-

Dated: April 27, 2017          By: _____

Dustin DuFault (#302,776)