UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vickerman Company,
        Plaintiff—
        Counter Defendant

Case No. 17-cv-1771 (JNE/SER)

v.        ORDER

Alexander Kushner;
April, Inc.,
        Defendants—
        Counter Claimants.

Starting in 2004 and then approximately yearly, Alexander Kushner wrote software for Vickerman Company, a wholesale supplier of decorative items. Compl. ¶¶ 1, 16, 20 Dkt. No. 1-1; *see* Countercl. ¶¶ 3-4, Dkt. No. 6. Alexander Kushner and April, Inc., are related, so, here, Counter Claimants are referred to simply as "Kushner." Countercl. ¶ 2. Vickerman Company and Kushner's relationship ended in March 2017, which led to this lawsuit. *See* Compl. ¶¶ 39-40. Kushner counterclaimed for infringement of the copyright in the software he wrote. Dkt. Nos. 1, 6. On December 13, 2017, Kushner moved to preliminarily enjoin Vickerman Company from the alleged copyright infringement. Mot., Dkt. No. 21. The Court granted that Motion in part at a March 19, 2018 Hearing. Dkt. No. 53. The Court explains its Order below.

The Court "may . . . grant temporary . . . injunctions on such terms as it may deem reasonable to prevent . . . infringement of a copyright." 17 U.S.C. § 502(a) (2018). On a preliminary record, a court reasonably enjoins copyright infringement when "the balance of equities . . . requires the court to intervene to preserve the status quo." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630 (8th Cir. 1991). These equities include "the probability that [the]

movant will succeed on the merits," "the threat of irreparable harm to the movant," "the balance between this harm and the injury [from] granting the injunction," and "the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Kushner must show a fair chance of prevailing on his copyright-infringement claim. *Richland/Wilkin Jt. Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016). Vickerman Company can infringe Kushner's copyright if, among other ways, the Company "prepare[s] derivative works based upon [Kushner's] copyrighted work." *See* 17 U.S.C. § 106(2) (2018). But Kushner could have licensed activities that would otherwise infringe. *See* Fed. R. Civ. P. 8(c)(1) (listing "license" as an "affirmative defense"). The "scope of [that] license . . . is limited . . . to a specific purpose." *Florida v. Jardines*, 569 U.S. 1, 9 (2013).

As to the software he wrote, *see* Compl. ¶¶ 16, 20; Countercl. ¶ 4, Kushner wants a preliminary injunction covering use of that software and access to that software's source code. Dkt. No. 22, at 16. As to use, Kushner does not have a fair chance of defeating Vickerman Company's license defense. A license to use the software is implied because, on the preliminary record, Vickerman Company paid Kushner to write and adapt the software for the Company's use. Kushner's 2016 Invoice lists a rated payment for his recorded hours and a lump payment for Vickerman Company's website. Dkt. No. 23-2 (describing total payment of $60,250 for Kushner's 2016 services). Kushner wrote that website's source code. Countercl. ¶ 4 ("Counter Defendant's website"). More generally, Kushner adapted the software he wrote for Vickerman

Company's use.  *See, e.g.*, *id.* ("This program records products information that [Vickerman Company's] customer(s) offer on their own websites.  [The Company's CEO] suspected that some of [the] customers were counterfeiting [Company] products.").  Depriving Vickerman Company of that use would deny the Company the benefit of paying Kushner to write the software.  The Motion is thus **DENIED IN PART** as to Vickerman Company's use of any copies installed and compiled on Company machines.

For a more limited injunction covering only source-code access, Kushner has a fair chance of prevailing as to threatened derivation from that source code.  One, he is fairly likely to show that Vickerman Company has threatened infringement in that way.  And, two, he is fairly likely to defeat the Company's license defense as to that form of infringement.  In an October 4, 2017 Email, a Company programmer proposed "add[ing] a watcher to the printing process" while "looking at the code" for a program called Epick.  Dkt. No. 40.  For Vickerman Company's use, Kushner wrote a program called Epick.  Countercl. ¶ 4.  In an October 16, 2017 Email, that programmer proposed "go[ing] into the PrintIt! [source] code and replac[ing]" something.  Dkt. No. 41.  Kushner wrote a program called PrintIt for Vickerman Company's use.  Countercl. ¶ 4.  On the preliminary record, Vickerman Company is fairly likely to have the source code Kushner wrote and to at least stand at the threshold of preparing a derivative work from it.

No license is implied to derivation.  While writing the software, Kushner mostly kept the source code on his machines.  Compl. ¶ 14.  Although Vickerman Company paid Kushner to write software for its use, the Company also paid him annually for "writing, monitoring, maintaining, and troubleshooting."  Compl. ¶¶ 16, 20.  If unlicensed, these

3

updating activities would infringe the copyright in the software Kushner wrote. An implied license to prepare derivative works would thus be inconsistent with the preliminary record.

To prevent infringement by preparation of derivative works, the Court **ENJOINS** Vickerman Company to return to Kushner and then delete any source-code copies of that software. This Order applies to the following programs that Kushner titled: *PDF Printer*, *PrintIt*, *Integrated FedEx*, *Integrated UPS*, *EDI* (*Electronic Data Interchange*), *Epick*, *Integrated Electronic Scale*, *Integrated Everest API*, *Product Selector*, *Integrated UPS shipment charges calculator*, *Counter Defendant's website*, *Receipt processor*, *Data exchange between Everest and Aleran*, *Csv2Xml* and *Website scraper*. See Fed. R. Civ. P. 65(d)(1).

The equities support this injunction. As discussed above, it fits what Kushner has a fair chance of showing on the merits. And because copyright infringement is fairly likely to be shown, irreparable harm is presumed. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041-42 (8th Cir. 2003). Kushner moved about two months after Vickerman Company's critical emails were made—a longer period than from when they were discovered—so that presumption is not rebutted by movant's delay. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (holding no abuse when irreparable-harm presumption was rebutted by movant's "failure to seek injunctive relief for . . . seventeen months").

This injunction is "narrowly tailored to protect [Kushner's] interest" in sole control of the source code. *See Hill*, 939 F.2d at 631. Vickerman Company would not be

injured much if it lost access to that source code.  The Company denies access.  The Company also derides the source code as "obsolete" and has already "hire[d] others to independently rewrite and replace" the software Kushner wrote.  Vickerman Company's Opp'n 25 (arguing "Balance of Harm"), Dkt No. 31.  Besides, Vickerman Company may continue using any copies of that software it has compiled and installed on its machines.  **SECURITY** is thus set at $25,000.  *See* Fed. R. Civ. P. 65(c).

Finally, this injunction serves the "public interest . . . in protecting the holders of valid copyrights from infringing activity." *Taylor Corp.*, 315 F.3d at 1042.  This injunction's harms are borne by small, private actors within a competitive marketplace and thus do not amount to a public interest.  *Cf. Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008).

And so, Kushner's Motion for a preliminary injunction [Dkt. No. 21] is **GRANTED IN PART** as to source-code access and **DENIED IN PART** as to use of installed and compiled copies.

IT IS SO ORDERED.

Dated:  March 20, 2018                                         s/ Joan N. Ericksen
                                                                     JOAN N. ERICKSEN
                                                                     United States District Judge